Michael W. Young, USB 12282
Lauren Hunt, USB 14682
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
MYoung@parsonsbehle.com
LHunt@parsonsbehle.com

*Attorneys for Plaintiff Kinley Nelson*

**IN THE FIFTH DISTRICT COURT**

**FOR THE COUNTY OF IRON, STATE OF UTAH**

| | |
|---|---|
| KINLEY NELSON,<br><br>    Plaintiff,<br><br>vs.<br><br>SOUTHERN UTAH UNIVERSITY,<br><br>    Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>Civil No.<br><br>Judge<br><br>Tier 3 |

### SUMMARY OF CASE

The injuries and claims of Ms. Nelson are based upon the University's failure to uphold its obligations to Ms. Nelson under Title IX. After Ms. Nelson had reported a fellow student's persistent stalking and harassment, for which she had also obtained a stalking injunction from a judge in criminal court, the University not only failed to remove the student from the multiple classes he shared with Ms. Nelson, but in fact sat this student directly behind Ms. Nelson and then eventually removed *her* from a required class without notice. Rather than ever relocating this student or removing this student from class, even temporarily, Ms. Nelson was told by Title IX

representatives that she should go home if she felt unsafe. The University failed to conduct a thorough Title IX investigation into this student and cited insufficient evidence of stalking or harassment as a reason for no further action. Ironically, Ms. Nelson had already proven stalking by this student to the same standard in a criminal court based on a lesser amount of conduct. Ms. Nelson ended up changing her chosen music major as her only avenue to avoid this student and feel safe in her own school and lost her full-tuition music scholarship to the University, but not before she was made aware that the University had violated its own privacy policy and that several faculty in the music department knew all about Ms. Nelson's "drama" and had been gossiping about what should have been a very private matter. Ms. Nelson was not only actively deprived of the educational benefits and opportunities to which she was entitled but has suffered severe emotional trauma from not only the stalking and harassment, but the institutional betrayal by the University that had a legal and moral obligation to protect her.

Accordingly, Plaintiff, by and through counsel, complain of Defendant Southern Utah University and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is an adult female who is a student at Southern Utah University.

2. Defendant Southern Utah University is located in Cedar City, Iron County, Utah. The University was responsible to uphold its duties and obligations to students under Title IX.

3. Jurisdiction is proper in this Court pursuant to Utah Code 78A-5-102(1).

4. Venue is properly before this Court pursuant to Utah Code 78B-3-307 because the conduct complained of occurred in Iron County, Utah and because the University is located in Iron County, Utah.

4836-9481-3375.v2

## GENERAL ALLEGATIONS

**Title IX requirements**

5. An institution may be liable for civil penalties if it has not upheld its legal obligations under Title IX.

6. An institution like the University may be liable for violating Title IX where the institution (a) acts with deliberate indifference to known acts of harassment discrimination, and/or assault; (b) through official policy creates a heightened risk of harassment, discrimination, and/or sexual assault; (c) retaliates against an individual who reports or complains or harassment, discrimination, and/or assault; (d) treats women and men disproportionately; and/or (e) enforces policies that result in unequal impact on men and women.

7. "Deliberate indifference to known acts of harassment . . . amounts to an intentional violation of Title IX, capable of supporting a private damages action." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999) (citing *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274 (1998).

8. This includes harassment both by the school itself and by other students, as long as "the funding recipient has some control over the alleged harassment." *Id.* at 644.

9. The Tenth Circuit has interpreted Supreme Court precedent to create a four-factor test for liability for deliberate indifference. A plaintiff "must allege that the [institution] (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999) (citing *Davis*).

10. Deliberate indifference may be demonstrated by a school's "respond[ing] to known . . . harassment in a manner that is clearly unreasonable." *Davis,* 526 U.S. at 649.

11. Whether a response is "clearly unreasonable" is a question of fact and is intended to be flexible. *Id.*

12. Nevertheless, where a university "knowingly refuse[s] to take any action in response to the behavior, such as investigating or putting an end to the harassment, or refuse[s] to take action to bring the recipient institution into compliance," the school has demonstrated deliberate indifference giving rise to liability. *Papelino v. Albany College of Pharmacy of Union Univ.*, 633 F.3d 81, 90 (2d Cir. 2011) (internal punctuation omitted) (quoting *Davis*, 526 U.S. at 651, 654; *Gebser*, 524 U.S. at 290).

13. A school "intentionally subject[s] students to harassment" when it "deliberately decide[s] not to take remedial action." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007) (emphasis in original) (citing *Davis*, 524 U.S. at 290).

14. Severity can also be established by a single incident. "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe."

15. The Department of Education has also provided guidance instructing schools to "consider whether their disciplinary policies have a chilling effect on victims' or other students' reporting of sexual violence offenses." U.S. Dep't of Educ. Office for Civil Rights, Dear Colleague Letter: Sexual Violence ("2011 Dear Colleague Letter"), at 15.

16. This may also occur where the school's "policy or custom of inadequately handling and even discouraging reports of peer sexual assault created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain." *Doe 1 v. Baylor Univ.*, 240 F.Supp.3d 646, 662 (W.D. Tex. 2017).

17. "Retaliation against a person because that person has complained of sex discrimination is [a] form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

18. A plaintiff establishes retaliation by showing "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Papelino*, 633 F.3d 81, 92 (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)).

19. Filing a complaint of discriminatory activity or harassment is a protected activity. *See, e.g., Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 563-64 (3d Cir. 2017); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014); *Papelino*, 633 F.3d at 92.

20. Demonstrating a causal connection between the protected activity and the adverse action is a question of fact, which applies the McDonnell Douglas burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

21. First, the plaintiff must establish a prima facie case of discrimination. Once the plaintiff has established a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.*

22. If the defendant is able to do so, the burden shifts back to the plaintiff to show that the defendant's articulated reasons were pretextual. *Id.*

23.     "The burden on a plaintiff to show a prima facie case of retaliation is low. Only 'a minimal threshold showing of retaliation is required.'" *Ollier*, 768 F.3d at 867 (quoting *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012)). Indeed, "Close temporal proximity between the plaintiff's protected activity and the . . . adverse action may in itself be sufficient to establish the requisite causal connection." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

24.     The proof necessary for a prima facie case "does not even need to rise to the level of a preponderance of the evidence." *Emeldi*, 698 F.3d at 724 (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)).

## FACTUAL ALLEGATIONS

25.     Kinley Nelson was attending the University with a full-tuition music scholarship in 2017.

26.     In August of 2017, Ms. Nelson shared a music class with fellow student L.W. and was paired with him as part of an assignment.

27.     L.W. began acting odd and making sexually suggestive comments to Ms. Nelson. He also began to talk to Ms. Nelson about his mental health issues, which included cutting, suicidal ideations, and his failure to take his medications as prescribed.

28.     L.W. began to show up late at night at Ms. Nelson's apartment, claiming he needed to talk to her to avoid suicide or self-harm.

29.     During this time period he asked that Ms. Nelson go out on a date with him, a request that she declined.

30.     On 2/2/2018, L.W. told Ms. Nelson that he was about to make a suicide attempt. Ms. Nelson called the Dean of Students, who also referred her to the Title IX office. Later that

day, L.W. told Ms. Nelson that he was being hospitalized but could be released if she picked him up. Ms. Nelson told him she was not equipped to help with his issues and was not comfortable with their level of contact. Title IX reached out to Ms. Nelson on this date via email.

31. On 2/3/2018, L.W. approached Ms. Nelson when she was alone and told her that his behavior the previous day was to get her attention, as he felt she had been ignoring him. Ms. Nelson again told him that she was not comfortable being near or communicating with him again.

32. On 2/5/2018, L.W. sat next to Ms. Nelson in class and stated he needed to talk to her. Again, she told him she did not wish to talk to him. She then went to the Title IX office, which told her to fill out a report with the University police department and handle it through the courts.

33. On 2/12/2018, Ms. Nelson filed a stalking injunction through the criminal courts and got a temporary stalking injunction put in place. While the injunction allowed L.W. to still attend school, it directed him to completely refrain from contacting or communicating with Ms. Nelson in any way, including following, threatening, annoying, harassing, or causing distress to her.

34. On 9/11/2018, L.W. violated the stalking injunction by sitting directly by Ms. Nelson in class. Ms. Nelson filed a police report. The following day, she met with the professor of the class to inform him of the situation. The professor told Ms. Nelson that L.W. had come into his office and apologized for approaching Ms. Nelson in class.

35. On 9/17/2018 the criminal court had an evidentiary hearing during which stalking was proven by a preponderance of the evidence and a permanent stalking injunction was put into place against L.W.

4836-9481-3375.v2

36. On 10/12/2018, Ms. Nelson saw L.W. at a school event and believed he was taking pictures of her. She again informed the police and filed a report.

37. On 1/8/2019, Ms. Nelson contacted the police again regarding another violation of the injunction at the gym.

38. Ms. Nelson attempted to talk to the professor of the classes she shared with L.W. In one class, L.W. sat directly behind Ms. Nelson and she requested that the professor move his seat. Instead of moving L.W., the professor asked Ms. Nelson to move her seat.

39. On 1/15/2019, Ms. Nelson requested that Title IX do an official investigation of L.W. regarding the continued stalking and violations of the stalking injunction. A Title IX representative informed Ms. Nelson that if the violation of the injunction was charged criminally, L.W. would be removed from the classes they had together. Ms. Nelson informed the professor, who then told her that she had already been removed from the class.

40. The class in question was an upper division music class, for which students had to audition. The professor told Ms. Nelson that she had been removed from the class and replaced by another student who hadn't had to audition. Ms. Nelson contacted the Title IX office.

41. On 2/12/2019, a Title IX representative called Ms. Nelson to inform her that, although L.W. had since been criminally charged with violating the stalking injunction, the University would not be removing him from the shared classes as they had previously told her. Ms. Nelson had a panic attack that day and her parents had to drive hours to be with her to calm her down.

42. On 2/13/2019, Ms. Nelson and her parents met with Title IX to tell them that she did not feel safe at school. Title IX representatives advised her to go home early from school so

that she could feel safe. Ms. Nelson had to take work off and obviously miss class to do so. Ms. Nelson also met with her other music professors to inform them that she was leaving early. A professor told her that she knew all about the "drama" regarding the issue because the music faculty had been gossiping.

43. Title IX began an investigation and allowed Ms. Nelson to review the report. Ms. Nelson indicated that they had failed to interview a vital witness. Title IX stated they would follow up with that witness.

44. On 3/26/2019, the Dean of Students emailed Ms. Nelson to inform her that they had insufficient evidence to support a finding of a violation of school policy, which expressly includes stalking.

45. In the summer of 2019, Ms. Nelson changed her chosen major in a desperate effort to avoid L.W. and consequently lost her full-tuition music scholarship.

46. As a direct and proximate result of the foregoing acts and omissions, and other acts and omissions of a similar nature, Ms. Nelson has been harmed and has suffered harm and damages including but not limited to physical and emotional pain and suffering, mental anguish and emotional distress, her full-tuition scholarship at University, future career options, and other special damages known and unknown to Ms. Nelson at this time.

### FIRST CAUSE OF ACTION

### Deliberate Indifference Under Title IX

47. Plaintiff incorporates and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

48. The University was deliberately indifferent when, despite having received multiple complaints from Ms. Nelson that she felt harassed, stalked, unsafe and unheard at school, no steps were taken to prevent L.W.'s actions and address Ms. Nelson's lack of safety other than affirmatively moving within or removing Ms. Nelson from her classes, depriving her of access to educational benefits and opportunities.

49. Although Ms. Nelson had already proven stalking in a criminal court to the same preponderance of an evidence standard to which the University is held, the University claimed it had insufficient evidence to take any action.

50. Although Title IX had previously informed Ms. Nelson that if L.W. was criminally charged with a violation of the injunction they would remove him from the shared classes with Ms. Nelson, they failed to do so.

51. Ms. Nelson suffered harassment so severe and pervasive that she forwent a full-tuition scholarship in her chosen field and changed majors simply to avoid L.W.

52. As a result of the University's deliberate indifference, Plaintiff suffered harm including emotional injury, pain and suffering, and past and future expenses for counseling and therapy, and other special damages known and unknown to Plaintiff at this time.

## SECOND CAUSE OF ACTION

### Retaliation Under Title IX

53. The University engaged in retaliation against Ms. Nelson when, knowing that she had filed official complaints against L.W. with both the University and police, it required Ms. Nelson to move her seating arrangements in class, leave school early so that she "could feel safe,"

and finally actually *removed her* altogether from a class required by her major. Ms. Nelson ended up changing her chosen major, foregoing her scholarship, in order to provide for her own safety.

54. Further, the University violated its own privacy policy regarding such matters to the extent that multiple faculty members in the music department had been "gossiping" about Ms. Nelson and the "drama" associated with her.

55. As a result of the University's retaliation, Plaintiff suffered harm including emotional injury, pain and suffering, and past and future expenses for counseling and therapy, and other special damages known and unknown to Plaintiff at this time.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1. For judgment in Plaintiff's favor and against the University for deliberate indifference under Title IX, disparate impact under Title IX, and retaliation under Title IX;

2. For an award of compensatory damages, including economic and non-economic damages, in favor of Plaintiff and against Defendant, including damages resulting from emotional distress, in an amount in excess of $300,000 to be determined at trial;

3. For an award of reasonable attorneys' fees and costs associated with this action;

4. For an award of post-judgment interest as allowed by law;

5. For such other and further relief as the Court may deem just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action.

DATED this 4th day of June, 2020.

                                  PARSONS BEHLE & LATIMER

                                  */s/ Lauren Hunt*
                                  Michael W. Young
                                  Lauren Hunt
                                  *Attorneys for Plaintiffs*